```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Jonathan Andrew Perfetto

   v.                                    Civil No. 12-cv-393-JL

Walter Alexis et al.[1]


**REPORT AND RECOMMENDATION**


Jonathan Perfetto has filed a complaint (doc. no. 1) pursuant to 42 U.S.C. § 1983, alleging that the defendants violated a number of his rights under the federal constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA"), during his incarceration at the Hillsborough County House of Corrections ("HCHC") from November 16, 2009, until November 14, 2010, and again from January 4,

---

[1] Perfetto names the following Hillsborough County House of Corrections ("HCHC") employees as defendants to this action in both their individual and official capacities: former Superintendent James O'Mara; Superintendent (and former Assistant Superintendent) David Dionne; Field Training Officer ("FTO") Ellis (first name unknown ("FNU")); Corrections Officer ("C.O.") FNU Lucas; C.O. FNU Crowell; C.O. FNU Goodyerez; C.O. FNU Price; C.O. FNU Sappyenzza; C.O. FNU Goulding; Lt. FNU Boyer; Capt. Gifford Hiscoe, Chief of Security; Capt. Marc Cusson, Chief of Operations; Medical Administrator Denise Ryan; Medical Director Bill Fuller; Dr. FNU Turnball; Dr. Matthew Masewic; Lt. FNU Robbins; Sgt. FNU Brown; Lt. FNU Riley; CO FNU Plumtin; mental health worker Christina Mellnick; FTO FNU Mackey; C.O. John Doe; FTO John Doe; Sgt. John Doe; and two Jane Doe mail clerks. Perfetto also names inmates Walter Alexis and Paul Dimmick as defendants.

2011, until December 19, 2011.  The matter is before the court for preliminary review to determine, among other things, whether the complaint states any claim upon which relief could be granted.  See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard for Preliminary Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity to respond to the claims.  The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).  To determine plausibility, the court treats as true all well-pleaded factual allegations, and construes all reasonable inferences drawn therefrom in the plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**Discussion**

I.  Mail Claims

Perfetto asserts claims that his right to send and receive mail was violated at the HCHC as follows: (1) he was sometimes denied one of three free letters indigent inmates are allowed to send each week; (2) he was denied the ability to prove he had sent mail to the courts by the HCHC's failure to track outgoing mail related to his pending cases; (3) he was not allowed to send his law-related mail by certified mail; and (4) he was not allowed to receive certain mail items as a result of restrictive requirements for incoming mail.

Inmates have a limited First Amendment right to send and receive mail and to possess reading materials.  "Inmates retain their First Amendment right to both send and receive mail,

although that right is subject to regulation." Hudson v. O'Brien, No. 09-10276-RWZ, 2010 WL 2900529, *2 (D. Mass. July 21, 2010); see also Beard v. Banks, 548 U.S. 521, 533 (2006). Prison policies burdening First Amendment rights are permissible if they are reasonably related to legitimate penological purposes. See Turner v. Safley, 482 U.S. 78, 87-89 (1987). Courts must accord prison administrators significant deference in defining legitimate goals for the corrections system and in determining the best means of accomplishing those goals. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Where jail policies address legitimate concerns, the inmate bears the burden of showing that the policy was an exaggerated response to those concerns. See id.

    Restrictions on free postage provided to inmates and the availability of certified mail are policies designed to serve legitimate concerns, including controlling prison expenses. Further, restrictions on the source of incoming mail are logically designed to control what items from outside are allowed to reach inmates. Perfetto has failed to show that the restrictions at issue were an exaggerated response to such concerns. Accordingly, Perfetto's claims regarding the restrictions on free postage, certified mail, and incoming mail should be dismissed.

II. Medical and Mental Health Care Claims

    A. Denial of Medication

Perfetto asserts that he was denied adequate medical and mental health care at the HCHC for a number of problems. "[T]he standard applied under the Fourteenth Amendment governing the [inadequate medical care] claims of pretrial detainees is the same as the Eighth Amendment standard governing the claims of convicted inmates." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 n.21 (1st Cir. 2011) (internal quotation marks and citation omitted). In order to state such a claim, an inmate must allege that defendants have committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 497. To act, or fail to act, with deliberate indifference, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Perfetto alleges that he saw mental health and medical care providers regularly and received treatment in response to his complaints; his allegations fail to demonstrate deliberate indifference. The claims alleging denial of adequate medical and mental health care should therefore be dismissed.

5

B.  Release of Suicidal Plaintiff

Perfetto complains that his right to be provided with mental health care at the HCHC was violated when, having completed his maximum sentence, he was released directly from suicide watch. Official responsibility for the care of inmates does not lie "for harm occurring after release when the individual is no longer forced to rely on authorities who limit action on his own behalf or intervention by others on the outside that would avoid harm." Coscia v. Town of Pembroke, 659 F.3d 37, 41 (1st Cir. 2011). Perfetto does not allege that he suffered resulting harm except suicidal thoughts on the day of his release. Nothing here gives rise to any reason to impose liability on any individual at the HCHC for Perfetto's post-release suicidal thoughts. Accordingly, this claim should be dismissed.

C.  Responsibility for Reoffending

Perfetto alleges that because no one at the HCHC would prescribe Depo-Provera to reduce his sexual urges and compulsions, he felt compelled to obtain child pornography approximately six weeks after his release, an act that resulted in Perfetto's return to custody. Perfetto does not have a federal right to receive treatment to prevent him from feeling

an urge or compulsion to commit a crime six weeks after his release.  The claim should be dismissed.

III. Religious Practices

Perfetto claims that defendants violated his right to practice his religion under the First Amendment Free Exercise Clause, and RLUIPA, by rejecting religious books and pamphlets Perfetto had ordered.  Perfetto further claims that it violated his religious beliefs to be denied pamphlets, as his religion requires him to disseminate religious information to others.

A.   Individual Capacity RLUIPA Damages Claims

Perfetto brings damages claims under RLUIPA against each defendant in his or her individual capacity.  Although the First Circuit has reserved judgment on the issue, see Kuperman v. Wrenn, 645 F.3d 69, 79 (1st Cir. 2011), every federal appeals court to address the issue has decided that RLUIPA does not authorize claims for damages asserted against state officials in their individual capacities.  See, e.g., Stewart v. Beach, 701 F.3d 1322, 1334-35 (10th Cir. 2012) (Congress in exercising its spending authority, authorized claims against RLUIPA grant recipients, and did not authorize claims asserted against individuals sued in their personal capacities); see also Cryer v. Spencer, No. 11-11953-PBS, 2013 WL 1192354, *6-7 (D. Mass.

7

Mar. 21, 2013) (collecting cases). Following the well-reasoned authority of the appellate courts that have addressed the issue, this court should dismiss Perfetto's individual capacity RLUIPA claims for damages.

### B. Official Capacity RLUIPA Damages Claims

RLUIPA prevents prisons from "substantially burdening an inmate's religious exercise unless the regulation under attack is the least restrictive way to advance a compelling state interest." Kuperman, 645 F.3d 69, 79 (1st Cir. 2011) (citing Cutter v. Wilkinson, 544 U.S. 709, 715-16 (2005)). A "substantial burden" has been described as "one that 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Spratt v. R.I. Dep't of Corrs., 482 F.3d 33, 38 (1st Cir. 2007) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1982) (alterations omitted)).

Here, Perfetto alleges that his religious exercise was substantially burdened by the mailroom officers' rejection of his religious books. While some burden may accrue from such a denial, no facts in the complaint suggest that the burden was substantial, in that Perfetto was not forbidden from possessing books, only from receiving them in a manner that violates the

HCHC mail policy. The court cannot reasonably infer that having to have books mailed pursuant to HCHC policy forced Perfetto to modify his behavior or violate his beliefs. Accordingly, Perfetto's RLUIPA claim concerning the books should be denied.

With regard to the pamphlets, however, Perfetto alleges that distribution of religious material is part of his religious practice and belief. Perfetto states that his religious practice includes following the biblical instruction to "preach the good news of God's Kingdom" which "sometimes . . . involve[s] giving out tracts, bibles, or pamphlets." Perfetto states that HCHC policy prevents inmates from distributing materials to one another. Perfetto alleges that this prohibition caused him to modify his behavior in a manner that significantly violated his beliefs and "effected [sic] his relationship with Jehovah God." At this early stage, Perfetto has stated sufficient facts to allege a substantial burden on his religious practice. In an order issued simultaneously with this report and recommendation (the "Simultaneous Order"), the court directs service of this claim against Capt. Marc Cusson, HCHC Chief of Operations; former HCHC Assistant Superintendent (now Superintendent) David Dionne; former Superintendent James

O'Mara; and two Jane Doe mailroom clerks; each in their official capacities.[2]

### C. RLUIPA Claims for Injunctive Relief

Perfetto claims that his RLUIPA and First Amendment rights were violated at the HCHC. Perfetto, however, has now been transferred to the state prison to serve a lengthy sentence, and nothing in the record indicates any likelihood that Perfetto will be reincarcerated at the HCHC. Accordingly, Perfetto's claims for injunctive relief against the HCHC defendants are moot and should be dismissed.

### D. First Amendment Claims

The First Amendment Free Exercise Clause "requires government respect for, and noninterference with," people's "religious beliefs and practices." Cutter, 544 U.S. at 719. That said, the First Amendment provides less protection to the free-exercise rights of inmates than does RLUIPA. See Bader v. Wrenn, 675 F.3d 95, 98 (1st Cir. 2012). An inmate's First

---

[2] "The extent to which RLUIPA permits damage claims against individual Defendants in their official capacities, when the Defendants are county employees, remains an open question." Aladimi v. Hamilton Cnty. Justice Ctr., No. 1:09-CV-398, 2012 WL 292587, *17-18 (S.D. Ohio Feb. 1, 2012), report and recommendation adopted by 2012 WL 529585, *1 (S.D. Ohio Feb. 17, 2012). For the purposes of preliminary review, this court assumes, without deciding, that RLUIPA damages claims could lie against defendants in their official capacities.

Amendment right to exercise his religion in jail may be restricted by prison officials only when such a restriction is "reasonably related to legitimate penological interests." Beard, 548 U.S. at 528 (quoting Turner, 482 U.S. at 89) (internal quotation marks omitted). The court has already deemed the prison's mail policy to be reasonably related to a legitimate penological interest in institutional security. Accordingly, Perfetto cannot state a Free Exercise Claim as to the defendants' execution of the incoming mail policy that prevented Perfetto from receiving religious pamphlets for distribution to other inmates, and the claim should be dismissed.

IV. Endangerment Claims

    A. Protective Custody

Perfetto was a protective custody inmate at the HCHC, and as such, was housed in the jail's maximum security unit, along with non-protective custody inmates classified to maximum security. Perfetto says that due to errors or oversights by corrections officers, sometimes one or more classification inmates would inadvertently be allowed into a common area at the same time as protective custody inmates. Perfetto does not allege that he was actually placed in danger or suffered harm,

and further alleges that once a policy violation was identified, corrections officers quickly separated the inmates. Perfetto fails to allege facts to support a claim that any officer knew of and disregarded a significant risk to Perfetto's safety, relating to the housing of protective custody inmates. See Farmer, 511 U.S. at 832. Accordingly, Perfetto has failed to state a claim arising out of exposure to classification inmates in the HCHC maximum security unit.

B.   Cellmates

Perfetto alleges that his cellmates, Walter Alexis and Paul Dimmick, assaulted him physically and sexually, and that officers failed to protect him from those inmates. Perfetto's allegations, however, reveal that once an officer actually became aware that there was an issue between Perfetto and a cellmate, Perfetto was immediately moved to another cell. Accordingly, Perfetto has not alleged that any defendant, aware of a risk of harm to Perfetto, failed to take reasonable steps to protect him.[3]  Perfetto has thus failed to state an

---

[3] At one point while Perfetto was housed with Alexis, Perfetto states that he filed a grievance that was investigated by HCHC Capt. Gifford Hiscoe. Plaintiff does not state what was in the grievance, whether it alleged an ongoing risk of harm to him, or how Hiscoe's actions were unreasonable. The allegations are too vague to support a claim for relief.

endangerment claim concerning his cellmates, and those claims should be dismissed.

V.   <u>Excessive Force</u>

Perfetto asserts that HCHC Officer Plumtin used excessive force against him by punching him in the face twice, causing Perfetto to fall, when officers asked Perfetto if he would molest children and download child pornography again once he was released from the HCHC, and Perfetto answered "You better f---ing believe it."  Perfetto states that he answered in the affirmative "to be a wise ass."  To evaluate a prisoner's excessive force claim, the court considers "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175, 1178 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)).  Here, Perfetto's allegations indicate that the provocation for Plumtin's assault was Plumtin's desire to hurt Perfetto, either because Perfetto was a child sex offender, a smart aleck, or both.  Nothing in the complaint suggests that the assault was a good faith response to a need to maintain or restore discipline or security.  Perfetto has asserted facts sufficient to state an

excessive force claim against Plumtin, and in the Simultaneous Order, the court directs service accordingly.

VI.  Private Defendants

Perfetto asserts claims that his cellmates violated his rights under the federal constitution.  A plaintiff claiming an infringement of his civil rights under § 1983 must establish that the defendant acted under color of state law.  See 42 U.S.C. § 1983; Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011).  Alexis and Dimmick are private individuals, not subject to suit under § 1983.  The claims against the cellmates should be dismissed.

## Conclusion

Perfetto has asserted two claims upon which relief might be granted: a RLUIPA damages claim against Marc Cusson, David Dionne, James O'Mara, and two Jane Doe mail clerks, sued in their official capacities, alleging the denial of religious pamphlets, and an excessive force claim against Officer Plumtin, and directs service accordingly in the Simultaneous Order.  For the reasons explained in this report and recommendation, the court recommends that the remaining claims and defendants in this action be dismissed.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                                                                      Landya McCafferty
                                                                                                      United States Magistrate Judge

May 21, 2013

cc:   Jonathan Andrew Perfetto, pro se

LBM:jba